# GERSTMAN SCHWARTZ LLP

### ATTORNEYS AT LAW

ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/20

January 3, 2020

Seth D. Berlin (BerlinS@ballardspahr.com)
Jacquelyn N. Schnell (SchellJ@ballardspahr.com)

Re: *Loudon v. The Daily Beast Company, LLC, et al.*, No. 19-cv-9414 (S.D.N.Y.)

Dear Seth and Jacquelyn:

We write on behalf of Dr. Gina Loudon ("Plaintiff") in response to your correspondence pursuant to Judge Marrero's Individual Practice Rule II.B.1.

Under FRCP 12(b)(6) and 8(a), Plaintiffs need only provide "a short and plain statement that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which its rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Plaintiffs must show at the pleading stage that success on the merits is more than a "sheer possibility," they need not demonstrate a "probability" of success. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal under Fed. R. Civ. P. 12(b)(6) is reserved for the unusual instances where there is "some insuperable bar to relief." *See Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). In this case, as fully described below, there is no such "insuperable bar."

## I.    Defamation.

At the outset, your claim that Florida law must be applied by this court is mistaken. Choice of law decisions are made on a case-by-case basis, (*Reeve v. ABC*, 719 F.2d 602, 605 (2d Cir. 1983)), and New York uses the "'paramount interest' or 'interests analysis' approach pursuant to which the law of the jurisdiction having the greatest interest in the litigation will be applied." *Belmac Hygiene, Inc. v. Medstar, Inc.*, 121 F.3d 835, 838 (2d. Cir. 1997). Under the "interests analysis" approach, "the only facts or contracts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Istim, Inc. v. Chem. Bank*, 78 N.Y.2d 342, 347 (N.Y. 1991) (internal citations omitted). Here, a majority of Plaintiff's business partners, business prospects and livelihood are derived from New York-based businesses. Indeed, it is largely based upon the Plaintiff having appeared on Fox News in New York that Defendant asserts Dr. Loudon is a public person. Moreover, The Daily Beast, which published the defamatory statements and laid out the false and misleading headline and lede in a manner that reinforced the falsity—and pervasively throughout the Article casts a disparaging shade upon Dr. Gina's credentials and integrity—is a New York-domiciled business. Thus, the only legal connection between Florida and Plaintiff is semantic. *Id.*

Wholly incorrect is your contention that the central facts of the subject Article are true, as is your reliance on the originally published article—as opposed to the updated article published on October 10, 2018, which is the subject of this lawsuit—to argue that the statute of limitations has

# GERSTMAN SCHWARTZ LLP
### ATTORNEYS AT LAW

expired. Undisputedly, the lawsuit was filed within one-year of the subject Articles publication.[1] Moreover, the Article's falsity must be viewed in its totality, including its misleading headline stating that *"Trump Adviser Gina Loudon's Book Claims She Has a Ph.D. in Psychology. She Doesn't. DOCTOR WHO?* Gina Loudon's book jacket proclaims she's 'America's favorite psychological expert.' The problem? She doesn't have the credentials to be one." This is not just an opinion.

Most critically, "[t]he rule in this State is that defamatory head lines [sic] are actionable though the matter following is not, unless they fairly indicate the substance of the matter to which they refer, and…unless they are a fair index of the matter contained in a truthful report." *Schermerhorn v. Rosenberg*, 73 AD 2d 276, 286 (2d Dep't 1980) (internal citations omitted); *see also Seldon v. Shanken*, 531 N.Y.S.2d 264 (1st Dep't 1988) (headlines may be independently defamatory, where not "a fair index of the matter to which they refer[]"). "To determine whether the headline is a fair index of the article with which it appears, both must be considered together. If the headline is a fair index of an accurate article, it is not actionable. If it is not a fair index, then the headline must be examined independently to determine whether it is actionable under general principles of libel. *That the defamatory meaning of the headline may be dispelled by a reading of the entire article is of no avail to the publisher. A headline is often all that is read by the casual reader and therefore separately carries a potential for injury as great as any other false publication."* Id. at 287 (emphasis added); *see also Seldon,* 531 N.Y.S.2d at 266, *supra.* The "fair index" standard is still employed. *See, e.g., Karedes v. Ackerley Group, Inc.,* 423 F.3d 107 (2d Cir. 2005). Here, there is no doubt that The Daily Beast knew the unfair headline was substantively false but nonetheless maliciously published the Article to inflict maximum damage upon a political enemy. A jury should be given an opportunity to make this determination.

Moreover, employing the analysis utilized by the United States Supreme Court to the instant matter, it is clear that the publisher and writer were not using loose or figurative speech.[2] The false headline and cascading, slanted and misleading nature of the entirety of the posting were intended not to negate a false impression of Dr. Loudon, but rather to create one. This is akin to throwing mud up against the wall to see what sticks; this is simply not a protected species of journalism. As the Second Circuit has noted, "The New York Court of Appeals has developed standards that federal courts follow in determining whether a statement or publication is defamatory…[which includes]…that courts must give the disputed language a fair reading in the context of the publication as a whole…A fair reading controls.…[and] It is the meaning reasonably attributable to the intended reader that controls." *Karedes* 423 F.2d at 113-114, *supra,* (internal citations omitted). Moreover, "as to falsity, the accuracy of the report should be assessed on the publication as a whole, not isolated portions of it, and a defendant is held only to a standard of substantial, not

---

[1] Florida's statute of limitations for defamation, libel and slander is two-years. *See* §95.11(4)(g). Thus, Plaintiff's claims are timely irrespective of whether New York or Florida laws apply.

[2] *See, e.g., Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21 (1990) ("This is not the sort of loose, figurative or hyperbolic language which would negate the impression that the writer was seriously maintaining petitioner committed the crime of perjury. Nor does the general tenor of the article negate this impression.").

# GERSTMAN SCHWARTZ LLP

### ATTORNEYS AT LAW

literal, accuracy." *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting Sys.*, Inc., 844 F.2d 955, 959 (2d Cir.1988).

Further, even the contention that Dr. Loudon, as a notable published author who has written about prominent public officials and appeared on news channels to discuss public officials and her books is, therefore, automatically a public person, should actually be determined by a jury. The evident intellectual dishonesty in which the Article is billed, laid out, published and edited conveys a malicious intent to portray Dr. Gina in a negative and false light and ultimately to mislead the casual reader who likely will just read the headline or the lede or skim the content.

Here, the headline at issue is not just an opinion. The phrase *"DOCTOR WHO"* is gratuitous and clearly intended to be so. It is a statement intended in its entirety to mislead the reader and tag Dr. Gina as a fraud. Other outlets with an axe to grind have used this false and misleading headline to republish and generate their own false headlines afterwards like "Fox's Trump-Loving 'Psychology Expert' A Fake."[3] Mission accomplished. Despite being objectively false—and certainly misleading—by maliciously, deftly and systematically misrepresenting Dr. Loudon's credentials, The Daily Beast created a fictive biography for Dr. Loudon. This is not news reporting. It also bears mentioning that the New York State Court of Appeals in *Chapadeau v. Utica Observer*, 38 N.Y. 2d 196, 199 (1975), while alluding to the Supreme Court in *Gertz v. Robert Welch*, 418 U.S. 323 (1973), articulated that "[t]he court felt that private individuals are more vulnerable because they lack a forum to rebut the false statements and that they are more deserving of recovery because they have not thrust themselves into the vortex of public controversy." Here, Dr. Gina was strategically discredited with falsehoods, thereby denying her any meaningful forum to rebut these false statements. When the publishers have stopped knocking and doors have now closed where previous invites to discuss her books were once bountiful—due directly to these falsehoods—we are expressly asking the Court to put back on some guardrails because it should be recognized that, in no uncertain terms, the Daily Beast's beastly conduct is not of the ilk found necessary to protect in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Even a cursory review of the Article, for the reasons articulated in our Complaint, makes clear that not only is the Daily Beast not employing journalistic standards warranting *New York Times* protections—that were historically afforded a generally responsible Fourth estate[4]—but its

---

[3] http://www.newshounds.us/fox_trump_loving_psychology_expert_fake_091418

[4] President Theodore Roosevelt on Muckraking:

> Now, it is very necessary that we should not flinch from seeing what is vile and debasing. There is filth on the floor, and it must be scraped up with the muck-rake; and there are times and places where this service is the most needed of all the services that can be performed. But the man who never does anything else, who never thinks or speaks or writes, save of his feats with the muck-rake, speedily becomes, not a help to society, not an incitement to good, but one of the most potent forces for evil. There are, in the body politic, economic and social, many and grave evils, and there is urgent necessity for the sternest war upon

# GERSTMAN SCHWARTZ LLP
### ATTORNEYS AT LAW

conduct viewed in the totality constitutes "actual malice." Additionally, Defendants assert that Dr. Loudon "does not dispute" this or that when, in fact, Dr. Loudon does dispute all these characterizations. That the Article went to print after her publisher clarified matters is a further indication of malice and is not exculpatory as Defendants would have it. Indeed, by denying Dr. Loudon the very appellation of "Doctor" when she is irrefutably a Ph.D. not only reflects overdone malice, it is simply not protected. "The scope of the newsworthiness exception to liability, however, must be construed in accordance with binding Court of Appeals precedent. The Court of Appeals has held that statutory liability applies to a materially and substantially fictitious biography where a knowing fictionalization amounts to an all-pervasive use of imaginary incidents and a biography that is nothing more than [an] attempt[] to trade on the persona of the plaintiff." *Porco v. Lifetime Entertainment Servs., LLC*, 147 AD 3d 1253, 1254 (3d Dep't 2017) (internal citations omitted).

It is respectfully argued that the Defendant's layer-caking of falsehoods to ridicule and discredit Dr. Loudon is "all-pervasive," fictive and an affront to journalism. It is a hit piece intended to silence and ruin, and not journalism worthy of 4th estate protections.

## II.    Intentional Infliction of Emotional Distress and Tortious Interference.

For all intents and purposes, the Defendant is putting the cart before the horse in seeking to dismiss the intentional infliction of emotional distress and tortious interference causes of action pre-discovery as a matter of law. As a practical matter, these claims have been sufficiently pled and intentionality is substantially borne out by the cascade of layered falsehoods intended to discredit, harm, silence and make Dr. Loudon the subject as an indirect means of attacking the President. Dr. Loudon, however, is not a surrogate of the President as alleged by Defendants' counsel, but rather an author who has written about the President in the context of her book; which is not quite the same thing. It is, however, the reason that false *ad hominem* attacks were employed against her. This said, making knowingly false statements about her with obvious malice is not protected First Amendment speech. Neither is making statements that the Defendants' writer had

---

them. There should be relentless exposure of and attack upon every evil man whether politician or businessman, every evil practice, whether in politics, in business, or in social life. I hail as a benefactor every writer or speaker, every man who, on the platform, or in book, magazine, or newspaper, with merciless severity makes such attack, provided always that he in his turn remembers that the attack is of use only if it is absolutely truthful. The liar is no whit better than the thief, and if his mendacity takes the form of slander, he may be worse than most thieves. It puts a premium upon knavery untruthfully to attack an honest man, *or even with hysterical exaggeration to assail a bad man with untruth*. An epidemic of indiscriminate assault upon character does not good, but very great harm. The soul of every scoundrel is gladdened whenever an honest man is assailed, or even when a scoundrel is untruthfully assailed.

Theodore Roosevelt, Pres. of the U.S., The Man with the Muck-Rake (Apr. 14, 1906).

# GERSTMAN SCHWARTZ LLP

### ATTORNEYS AT LAW

to have known would cause mental anguish and embarrassment while causing her to lose or diminish current and prospective lucrative opportunities as an author and expert. Pre-discovery, and even pre-verified bill of particulars, to attempt to have these causes of action dismissed as a matter of law is, at the very least, premature. The idea that no triable issues of fact exist warranting dismissal as a matter of law at this juncture is about as sound as the lies and intentionally misleading lede and content of Defendant's article. *See Zuckerman v. City of NY*, 49 N.Y.2d 557 (1980).

### III.  IAC Should Not Be Dismissed.

On information and belief, The Daily Beast is referenced as part of IAC's publishing business in IAC's 10K filed with the SEC and alternatively as an online business of IAC and an IAC Brand. The Defendant cites to *Franklin v Daily Holdings, Inc.* 135 A.D.3d 87 (1st Dept. 2015) for the proposition that, as a matter of law, publication cannot be imputed to an indirect corporate owner like IAC. In actuality, however, the court in *Franklin* never quite reached this question. Instead, it was stated that "Defendant News Corp. *argues* that plaintiff failed to plead a cause of action against it, since News Corp. cannot be held liable for statements of its subsidiary. In response, plaintiff argues that his claim is actually one based upon piercing the corporate veil." *Id.* at 95-96 (emphasis added). The court then ruled that the piercing the corporate veil threat had not been met based on a dominion analysis. *Id.* Here, pre-discovery, we only have counsel's word for how IAC operates its publishing arm and what role IAC plays in such publishing. Essentially, it is premature to let IAC off the hook at this stage.

### IV.  Attorneys' Fees and Costs.

As articulated herein, despite your contentions, Plaintiff's claims are not without merit and are wholly supported by the facts. In the first instance, we maintain that New York law attaches based on the center of gravity: the location of the publisher who promulgated the wrong. Notably, we filed this lawsuit in New York Supreme Court based on the publisher's location. We note as well that the harm and damages to Dr. Loudon emanate from New York and that such is irrefutable. Dr. Loudon has not been called back to Fox and Friends in New York and New York publishers are no longer beating a path to her door. If, however, the Court somehow decided otherwise, the Court is not required to award attorneys' fees and costs to the prevailing party under the permissive language of Florida's anti-SLAPP statute as Dr. Loudon has a good faith basis for initiating this lawsuit in order to attempt to restore her good name and check the dishonest and malicious conduct of the defendants. *See* Fla. Stat. § 768.29.

Sincerely,
/s/
David M. Schwartz
Randy E. Kleinman

cc:  The Honorable Victor Marrero (by facsimile)

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by ___plaintiff___.

SO ORDERED.

1-6-20
DATE      VICTOR MARRERO, U.S.D.J.