# GERSTMAN SCHWARTZ LLP
ATTORNEYS AT LAW

ORIGINAL

January 13, 2020

**VIA FACSIMILE**
The Honorable Victor Marrero
Courtroom 15B
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/14/20
```

Re:   *Loudon v. The Daily Beast Company, LLC, et al.*, No. 19-cv-9414 (S.D.N.Y.)

Dear Judge Marrero:

     Pursuant to Your Honor's Individual Practice Rule II.B.1.2, we write on behalf of Dr. Gina Loudon ("Plaintiff" or "Dr. Loudon") in response to Defendants The Daily Beast Company LLC's ("The Daily Beast) and IAC/InterActiveCorp's ("IAC) (collectively, "Defendants") request for a pre-motion conference seeking dismissal of Dr. Loudon's Complaint. Plaintiff will address Defendants' claims seriatim:

     First, wholly incorrect is Defendants' contention that the central facts of the subject Article are true. The Article's falsity must be viewed in its totality including its misleading headline that Defendants improperly characterize as "consistent with the balance of the Article's text" and otherwise nonactionable. Indeed, a reasonable jury could conclude that the Article's gratuitous emphasis and placement of the phrase "*DOCTOR WHO?*" (offsetting and angling the words in a red font and capital letters) to erroneously highlight the fact that Dr. Loudon is not a doctor—when, in fact, she most certainly is—is neither "fair and true" nor "substantially accurate." *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (internal citations omitted) ("A report cannot be said to be substantially accurate, however, if it would have a different effect on the mind of the recipient than the actual truth.").

     By denying Dr. Loudon the very appellation of "Doctor" when she is irrefutably a Ph.D. not only reflects overdone malice, it is simply not protected. The headline at issue is not just an opinion and there is no doubt that The Daily Beast knew it was substantively false but nonetheless maliciously published the Article to inflict maximum damage upon a perceived political enemy. It is respectfully argued that the Defendant's layer-caking of falsehoods to ridicule and discredit Dr. Loudon is "all-pervasive," fictive and an affront to journalism. It is a hit piece intended to silence and ruin, and not journalism worthy of 4th estate protections. A jury should be given an opportunity to make this determination. *See, e.g., Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178 (2d Cir. 2000). ("If the words are reasonably susceptible of multiple meanings, some of which are not defamatory, it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood.")

# GERSTMAN SCHWARTZ LLP
ATTORNEYS AT LAW

Second, Defendants' position that Dr. Loudon's claims for intentional infliction of emotional distress and tortious interference are nonactionable "tag-along" claims is false. As a practical matter, these claims have been sufficiently pled and intentionality is substantially borne out by the cascade of layered falsehoods intended to discredit, harm, silence Dr. Loudon. Indeed, Defendants' knowingly false statements about Dr. Loudon with obvious malice is not protected First Amendment speech. Similarly unprotected are statements that Defendants knew would cause Dr. Loudon mental anguish and embarrassment while causing her to lose or diminish current and prospective lucrative opportunities as an author and expert. Pre-discovery, and even pre-verified bill of particulars, to attempt to have these causes of action dismissed as a matter of law is, at the very least, premature. The idea that no triable issues of fact exist (or even that no viable cause of action has been pled) warranting dismissal as a matter of law at this juncture is about as sound as the lies and intentionally misleading lede and content of Defendants' Article. *See Zuckerman v. City of NY*, 49 N.Y.2d 557 (1980).

Third, Defendants are further mistaken that IAC must be dismissed as a party. The Daily Beast is referenced as part of IAC's publishing business in IAC's 10K filed with the SEC and alternatively as an online business of IAC and an IAC Brand.[1] Thus, it is unclear how IAC operates its publishing arm and what role IAC played in publishing the Article.

Fourth, Defendants' claim that Florida law must be applied by this court is mistaken. Choice of law decisions are made on a case-by-case basis, (*Reeve v. ABC*, 719 F.2d 602, 605 (2d Cir. 1983)), and New York uses the "'paramount interest' or 'interests analysis' approach pursuant to which the law of the jurisdiction having the greatest interest in the litigation will be applied." *Belmac Hygiene, Inc. v. Medstar, Inc.*, 121 F.3d 835, 838 (2d. Cir. 1997). Under the "interests analysis" approach, "the only facts or contracts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Istim, Inc. v. Chem. Bank*, 78 N.Y.2d 342, 347 (N.Y. 1991) (internal citations omitted).

Here, a majority of Plaintiff's business partners, business prospects and livelihood are derived from New York-based businesses. Yet, Defendants' conflate this analysis by cherry-picking and mischaracterizing the limited instances in which Dr. Loudon has had even the most tenuous connection to the Florida market. These references include a few op-ed articles for Florida-based news outlets and appearances on Fox News and CNN—both of which are New York-domiciled companies—allegedly filmed from Florida. Defendants also argue that Florida is the state that issued the very credentials the Article itself—published by The Daily Beast, a New York-domiciled company—falsely and pervasively denies that Dr. Loudon possesses. Defendants' argument ignores the many other states traveled to and/or effected by Dr. Loudon's work and the fact that New York remains her primary business hub and source of revenue. Thus, the only legal connection between Florida and Plaintiff is semantics. *Id.*

---

[1] https://www.sec.gov/Archives/edgar/data/891103/000089110319000006/iac-20181231x10k.htm

# GERSTMAN SCHWARTZ LLP

ATTORNEYS AT LAW

Lastly, with regard to Defendants' claim for fees and costs, Dr. Loudon's claims are not without merit and are wholly supported by the facts. In the first instance, insofar as the Defendants are domiciled in New York, the Article was published in New York, Dr. Loudon's business interests are in New York, and the harm and damages to Dr. Loudon emanate from New York, New York has a "paramount interest" in the instant litigation and its laws therefore apply. *See Belmac Hygiene, Inc.*, 121 F.3d at 838, *supra*. Even assuming, *arguendo*, that Florida law applies, the Court is not required to award attorneys' fees and costs to the prevailing party under the permissive language of Florida's anti-SLAPP statute as Dr. Loudon had a good faith basis for initiating this lawsuit in order to attempt to restore her good name and check the dishonest and malicious conduct of Defendants. *See* Fla. Stat. § 768.29.

Respectfully Submitted,
/s/
David M. Schwartz
Randy E. Kleinman

cc: Seth D. Berlin, Counsel for Defendants (via mail and email)
Jacquelyn N. Schnell, Counsel for Defendants (via mail and email)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by plaintiff.

SO ORDERED.

1-14-20
DATE       VICTOR MARRERO, U.S.D.J.