ORIGINAL



**Ballard Spahr** LLP

------------------------

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/23/20

Seth D. Berlin
Tel: 202.508.1122
berlins@ballardspahr.com

Jacquelyn N. Schell
Tel: 646-346-8048
schellj@ballardspahr.com



January 9, 2020

*By Hand Delivery*
The Honorable Victor Marrero
Courtroom 15B
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Re:   *Loudon v. The Daily Beast Company LLC, et al.*, No. 19-cv-9414 (S.D.N.Y.)

Dear Judge Marrero:

Pursuant to Your Honor's Individual Rule of Practice II.B.2, we write on behalf of
Defendants The Daily Beast Company LLC ("The Daily Beast") and IAC/InterActiveCorp
("IAC") to request a pre-motion conference and to explain why a motion to dismiss remains
necessary following the required exchange of correspondence, attached as Exhibits 1 and 2.[1]

*First*, the Complaint fails to state a claim for defamation. The Article at issue accurately
reports that Plaintiff Gina Loudon does not have a Ph.D. in psychology and is not licensed to
practice as a psychologist. To the extent the parties differ on whether her Ph.D. in "Human and
Organization Systems," *see* Compl. ¶ 22 & Ex. B, could somehow qualify as a degree in
psychology, the Article's conclusion that it does not is a constitutionally protected expression of
opinion. Loudon's contention that her claim can survive by severing the Article's headline from
its body fails because the headline (a) is consistent with the balance of the Article's text and,
(b) even if viewed on its own, would not be actionable for the same reasons described above and
in Defendants' initial letter. Loudon's arguments that this issue, and the question of whether she
is a public figure required to plead and prove actual malice, are premature is incorrect as a matter
of settled law. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015); Compl. ¶¶ 14, 34, 43.

*Second*, Loudon's letter simply fails to address the multiple, independent grounds set
forth in Defendants' initial letter explaining why her three "tag-along" causes of action fail to
state a claim.[2]

---

[1] Although Defendant Tanya Basu, The Daily Beast's former science editor, has not been served,
she would be entitled to dismissal for the same reasons as set forth herein and in the attached.

[2] Loudon's claims are also barred by the statute of limitations. In arguing otherwise, she
incorrectly claims that the longer Florida statute of limitations should apply, disregarding New
York choice of law rules requiring application of whichever statute of limitations is shorter – in
this case New York's one-year limitations period. *See* CPLR 202 & 215(3); *2138747 Ontario,
Inc. v. Samsung C&T Corp.*, 31 N.Y.3d 372, 377 (2018). And, because there were no
substantive changes to the Article after its initial publication, the one-year limitations period runs
from the original date of publication, well more than a year before Loudon filed suit.

The Honorable Victor Marrero
January 9, 2020
Page 2

    *Third*, because Loudon has not and could not plead that the Article was published by IAC
(as distinguished from its indirect subsidiary The Daily Beast), she has failed to plead an
essential element of her claims against IAC, she is not entitled to discovery on this issue, and
IAC must be dismissed.

    *Finally*, Florida law applies and mandates an award of Defendants' fees and costs.
Loudon resides in Florida, Compl. ¶ 7; the Article focuses on her qualifications for licensure in
Florida, Article at 4; and the public record confirms that her work as a commentator and
advocate is centered in Florida, *see* Exhibit 3 (attached).  Although dismissal would be required
under either Florida or New York law, Florida's Anti-SLAPP statute also mandates an award of
Defendants' attorneys' fees and costs.  Fla. Stat. § 768.295; *Parekh v. CBS Corp.*, 2019 U.S.
Dist. LEXIS 109212, at *3-4 (M.D. Fla. July 1, 2019); *see also Adelson v. Harris*, 2018 U.S.
Dist. LEXIS 53416, at *3, 18 (S.D.N.Y. Mar. 29, 2018) (applying "mandatory fee shifting"
provision of Nevada Anti-SLAPP statute and awarding almost $2 million in fees and costs).

    Because these deficiencies are not curable through amendment (and Loudon does not
contend otherwise) and because she is unwilling to withdraw her Complaint, Defendants
respectfully submit that a motion to dismiss is necessary and request that the Court schedule a
pre-motion conference.  For purposes of scheduling, Defendants' lead counsel notes that he
serves as an Adjunct Professor of Media Law at Georgetown University Law Center, teaches on
Tuesdays this semester, and respectfully requests that, if possible, the conference be scheduled
for another day of the week (although if it needs to be on a Tuesday, he will of course make the
necessary arrangements to appear).  Thank you for your consideration of this matter.

Respectfully submitted,

/s/

Seth D. Berlin
Jacquelyn N. Schell

Enclosures

cc:     David M. Schwartz, Esq., Counsel for Plaintiff (via mail and email)
        Randy E. Kleinman, Esq., Counsel for Plaintiff (via mail and email)

> The Clerk of Court is directed to enter into the public record
> of this action the letter above submitted to the Court by
> ~~*defendants*~~.
>
> **SO ORDERED.**
>
> 1-23-20
>
> DATE          VICTOR MARRERO, U.S.D.J.

# Exhibit 1

## Defendants' Initial Letter

# Ballard Spahr LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Seth D. Berlin
Tel: 202.508.1122
berlins@ballardspahr.com

Jacquelyn N. Schell
Tel: 646-346-8048
schellj@ballardspahr.com

December 20, 2019

David M. Schwartz, Esq. (dschwartz@gerstmanschwartz.com)
Randy E. Kleinman, Esq. (rkleinman@gerstmanschwartz.com)

Re:   *Loudon v. The Daily Beast Company, LLC, et al.*, No. 19-cv-9414 (S.D.N.Y.)

Dear David and Randy:

We write on behalf of The Daily Beast Company LLC ("The Daily Beast") and
IAC/InterActiveCorp ("IAC") (collectively, "Defendants"),[1] pursuant to Judge Marrero's
Individual Practice Rule II.B.1, to explain why your client's Complaint fails to state a claim.

## I.   Loudon's Claims for Defamation (Counts I and II) Fail to State a Claim.

Under both the common law and the First Amendment, Loudon must plead, among other
things, (a) statements of fact, (b) that she contends are false, and (c) that she alleges Defendants
published with subjective awareness of their falsity. As an initial matter, the challenged Article
accurately reports that Loudon "obtained a Ph.D. in a field called 'human and organization
systems'" and that she is not licensed as a psychologist. Compl. ¶¶ 15, 18, 22 & Ex. B
(confirming that she has "a PhD in Human and Organization Systems" and nowhere contending
that she has a license). Because the Article's statements on these central facts are true, they are
non-actionable. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (imposing
"constitutional requirement that the plaintiff bear the burden of showing falsity").

Loudon's real gripe seems to be that, despite its text, the Article somehow "accus[es] her
. . . of not having [any] psychology degree," Compl. ¶ 1; *id.* at ¶ 22 (pointing to her "bachelor's
degree" in psychology), and falsely suggests that she "is not a Doctor," *id.* ¶ 21. But the Article
makes clear – including in its headline, its text, and its focus on whether she is qualified to make
clinical judgments about President Trump in her book – that it is addressing her doctoral degree
and licensure. *See, e.g., Turner v. Wells*, 879 F.3d 1254, 1262-70 (11th Cir. 2018) (confirming
that meaning conveyed by article is in first instance a question of law for the court, affirming
order granting motion to dismiss after "considering the Report's actual text," and rejecting
plaintiff's efforts to "cherry pick statements . . . out of context") (applying Florida law).[2]

Loudon likewise complains about the Article's judgments about her educational
credentials, contending that her "Master's Degree in Organization Development [is] analogous to

---

[1] Defendant Tanya Basu, The Daily Beast's former science editor, has not been served.

[2] A New York federal court applies (a) New York's choice of law rules, which in a claim for
defamation and related torts means the law of plaintiff's home state (Florida), *see, e.g., Reeves v.
ABC*, 719 F.2d 602 (2d Cir. 1983), and (b) federal precedent for federal constitutional issues.

December 20, 2019
Page 2

Industrial Psychology," that her "PhD in Human and Organization Systems [is] a subset of psychology," and that her transcripts (which were obviously unavailable to The Daily Beast) show that her "entire education is grounded in the field of psychology." Compl. ¶ 22 & n.6; *see also id.* ¶ 20 (relying on etiquette guide's advice that person with Ph.D. may be called "Doctor"). But whether her credentials are sufficiently "psychological" or whether she is qualified to make clinical psychological judgments are protected expressions of opinion, not statements of fact that can be actionable in defamation. *See Turner*, 879 F.3d at 1262 ("Whether the statement is one of fact or opinion" is a "question of law for the court"; protecting "opinion based on facts which are set forth in the publication or which are . . . available to the reader"); *Doe v. White Plains Hosp. Med. Ctr.*, 2011 U.S. Dist. LEXIS 76076, at *3, *8 (S.D.N.Y. July 8, 2011) (statement that plaintiff "lack[ed] nursing knowledge and clinical judgment" was protected opinion).[3]

Finally, even assuming that Loudon's claims were based on false statements of fact (which they are not), as a public figure, she must plead – and ultimately prove by clear and convincing evidence – that the defendant published the challenged statements "with 'actual malice' – that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). Here, each of Loudon's allegations, even if proven, would not establish actual malice as a matter of law. *First*, although she claims that defendants failed to engage in "rudimentary journalistic research," Compl. ¶ 23; *id.* ¶¶ 20, 26, 31, a "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). *Second*, although Loudon repeatedly asserts that defendants published the Article based on their purported ill will towards her and President Trump, *e.g.*, Compl. ¶¶ 1, 4, 16, 18-19, 25-26, 41, 50, it is well settled as a matter of constitutional law that ill motive alone "cannot provide a sufficient basis for finding actual malice." *Harte-Hanks*, 491 U.S. at 665. *Third*, Loudon does not dispute that Ms. Basu repeatedly attempted to contact her prior to publication, negating her claim of actual malice. *See Contemporary Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 270 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612 (2d Cir. 1988). *Finally*, Loudon does not dispute that her own publisher acknowledged that the statements about her Ph.D. were false and agreed to correct them in future editions of her book, underscoring the publisher's belief that the Article's statements were true.[4]

---

[3] Statements about whether the university conferring her Ph.D. is an "online school" or "a brick and mortar graduate university," Compl. ¶¶ 18-20 & nn.3-4, are not about Loudon and would not subject either the school or her to the "hatred, distrust, ridicule, contempt or disgrace" required to state a claim. *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 716 (11th Cir. 1985).

[4] In addition, Loudon's claim is untimely. Under New York's choice of law rules, *see* note 2 *supra*, "[w]hen a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." *2138747 Ontario, Inc. v. Samsung C&T Corp.*, 31 N.Y.3d 372, 377 (2018). The Article was published more than a year before Loudon sued, and her claims are thus time-barred under New York's one-year statute of limitations. CPLR 215(3). Because Loudon incorrectly asserts that the Article was published within the limitations period, Compl. ¶ 15, defendants will, if necessary, request the Court to authorize an early motion for summary judgment on this discrete issue, while otherwise staying the case.

December 20, 2019
Page 3

**II.    Loudon's "Tag-Along" Claims (Counts III-V) Also Fail to State a Claim.**

Loudon's claims for intentional infliction of emotional distress and tortious interference with prospective and existing business relationships also fail as a matter of law for multiple, independent reasons. *First*, she cannot evade First Amendment protections for speech, detailed above, by dressing up her defamation claims as other torts. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 51-57 (1988) (so holding on claim for intentional infliction of emotional distress). *Second*, even under state law, Florida's "single action rule" bars each of Loudon's "tag-along" claims because they are based on the same article underlying her defamation claim. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014). *Third*, even if not barred, Loudon's IIED claim would fail because questioning the credentials of a surrogate for a U.S. president is far from the kind of extreme and outrageous conduct necessary to establish this tort. *See Cape Publ'ns, Inc. v. Bridges*, 423 So. 2d 426, 427 (Fla. 5th DCA 1982) (publishing article about abducted plaintiff's rescue while clad only in dish towel did not rise to level of outrageousness required). *Finally*, even if not barred, Loudon's intentional interference claims fail because she does not identify any existing contract or business relationship that was actually harmed, as required. The only relationship she identifies is with Amazon. Compl. ¶ 61. But the Amazon relationship is with her *publisher* and is concededly ongoing. Loudon alleges only that Amazon sold fewer books because readers thought less of her – further confirming that her true claim is for injury to reputation and is addressed, to the extent viable, by her defamation claim.

**III.    IAC Should Be Dismissed Because It Did Not Publish Anything.**

Each of Loudon's claims stems from the publication of the Article, which Loudon correctly alleges was published by The Daily Beast. Compl. ¶ 10. As a matter of law, the act of publication cannot be imputed to an indirect corporate owner like IAC, and thus it should be dismissed. *See, e.g., Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 95-96 (1st Dep't 2015).

**IV.    Defendants Are Entitled to An Award of Their Attorneys' Fees and Costs.**

Florida's "Anti-SLAPP" statute authorizes defendants to seek dismissal of claims that are "without merit" and brought because the defendant "exercised the constitutional right of free speech in connection with a public issue," which is defined to include a "news report" or "other similar work." Fla. Stat. § 768.295. Upon a successful motion, an award of attorneys' fees and costs is mandatory. *Id.*; *Parekh v. CBS Corp.*, 2019 U.S. Dist. LEXIS 109212, at *3-4 (M.D. Fla. July 1, 2019). In addition, under Fla. Stat. § 57.105, a substantive provision of Florida law that applies in federal court, *see Capital Factors, Inc. v. Heller Fin., Inc.*, 712 F. Supp. 908, 914 n.7 (S.D. Fla. 1989), attorneys' fees and costs are recoverable for defending claims that both Loudon and you as her counsel should know are not supported by either facts or law. To avoid owing fees and costs, Loudon should promptly dismiss her Complaint with prejudice.

Very truly yours,
/s/
Seth D. Berlin
Jacquelyn N. Schell

cc:     The Honorable Victor Marrero (by hand delivery)

# Exhibit 2

## Plaintiff's Response

# GERSTMAN SCHWARTZ LLP

ATTORNEYS AT LAW

January 3, 2020

Seth D. Berlin (BerlinS@ballardspahr.com)
Jacquelyn N. Schnell (SchellJ@ballardspahr.com)

Re:     *Loudon v. The Daily Beast Company, LLC, et al.*, No. 19-cv-9414 (S.D.N.Y.)

Dear Seth and Jacquelyn:

We write on behalf of Dr. Gina Loudon ("Plaintiff") in response to your correspondence pursuant to Judge Marrero's Individual Practice Rule II.B.1.

Under FRCP 12(b)(6) and 8(a), Plaintiffs need only provide "a short and plain statement that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which its rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Plaintiffs must show at the pleading stage that success on the merits is more than a "sheer possibility," they need not demonstrate a "probability" of success. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal under Fed. R. Civ. P. 12(b)(6) is reserved for the unusual instances where there is "some insuperable bar to relief." *See Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). In this case, as fully described below, there is no such "insuperable bar."

## I.     Defamation.

At the outset, your claim that Florida law must be applied by this court is mistaken. Choice of law decisions are made on a case-by-case basis, (*Reeve v. ABC*, 719 F.2d 602, 605 (2d Cir. 1983)), and New York uses the "'paramount interest' or 'interests analysis' approach pursuant to which the law of the jurisdiction having the greatest interest in the litigation will be applied." *Belmac Hygiene, Inc. v. Medstar, Inc.*, 121 F.3d 835, 838 (2d. Cir. 1997). Under the "interests analysis" approach, "the only facts or contracts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Istim, Inc. v. Chem. Bank*, 78 N.Y.2d 342, 347 (N.Y. 1991) (internal citations omitted). Here, a majority of Plaintiff's business partners, business prospects and livelihood are derived from New York-based businesses. Indeed, it is largely based upon the Plaintiff having appeared on Fox News in New York that Defendant asserts Dr. Loudon is a public person. Moreover, The Daily Beast, which published the defamatory statements and laid out the false and misleading headline and lede in a manner that reinforced the falsity—and pervasively throughout the Article casts a disparaging shade upon Dr. Gina's credentials and integrity—is a New York-domiciled business. Thus, the only legal connection between Florida and Plaintiff is semantic. *Id.*

Wholly incorrect is your contention that the central facts of the subject Article are true, as is your reliance on the originally published article—as opposed to the updated article published on October 10, 2018, which is the subject of this lawsuit—to argue that the statute of limitations has

## GERSTMANSCHWARTZ.COM

1399 Franklin Ave, Suite 200, Garden City, NY 11530     OFFICE: (516) 880-8170     FAX: (516) 880-8171

# GERSTMAN SCHWARTZ LLP
### ATTORNEYS AT LAW

expired. Undisputedly, the lawsuit was filed within one-year of the subject Articles publication.[1] Moreover, the Article's falsity must be viewed in its totality, including its misleading headline stating that *"Trump Adviser Gina Loudon's Book Claims She Has a Ph.D. in Psychology. She Doesn't. DOCTOR WHO?* Gina Loudon's book jacket proclaims she's 'America's favorite psychological expert.' The problem? She doesn't have the credentials to be one." This is not just an opinion.

Most critically, "[t]he rule in this State is that defamatory head lines [sic] are actionable though the matter following is not, unless they fairly indicate the substance of the matter to which they refer, and…unless they are a fair index of the matter contained in a truthful report." *Schermerhorn v. Rosenberg*, 73 AD 2d 276, 286 (2d Dep't 1980) (internal citations omitted); *see also Seldon v. Shanken*, 531 N.Y.S.2d 264 (1st Dep't 1988) (headlines may be independently defamatory, where not "a fair index of the matter to which they refer[]"). "To determine whether the headline is a fair index of the article with which it appears, both must be considered together. If the headline is a fair index of an accurate article, it is not actionable. If it is not a fair index, then the headline must be examined independently to determine whether it is actionable under general principles of libel. *That the defamatory meaning of the headline may be dispelled by a reading of the entire article is of no avail to the publisher. A headline is often all that is read by the casual reader and therefore separately carries a potential for injury as great as any other false publication.*" *Id.* at 287 (emphasis added); *see also Seldon,* 531 N.Y.S.2d at 266, *supra*. The "fair index" standard is still employed. *See, e.g., Karedes v. Ackerley Group, Inc.*, 423 F.3d 107 (2d Cir. 2005). Here, there is no doubt that The Daily Beast knew the unfair headline was substantively false but nonetheless maliciously published the Article to inflict maximum damage upon a political enemy. A jury should be given an opportunity to make this determination.

Moreover, employing the analysis utilized by the United States Supreme Court to the instant matter, it is clear that the publisher and writer were not using loose or figurative speech.[2] The false headline and cascading, slanted and misleading nature of the entirety of the posting were intended not to negate a false impression of Dr. Loudon, but rather to create one. This is akin to throwing mud up against the wall to see what sticks; this is simply not a protected species of journalism. As the Second Circuit has noted, "The New York Court of Appeals has developed standards that federal courts follow in determining whether a statement or publication is defamatory…[which includes]…that courts must give the disputed language a fair reading in the context of the publication as a whole…A fair reading controls….[and] It is the meaning reasonably attributable to the intended reader that controls." *Karedes* 423 F.2d at 113-114, *supra*, (internal citations omitted). Moreover, "as to falsity, the accuracy of the report should be assessed on the publication as a whole, not isolated portions of it, and a defendant is held only to a standard of substantial, not

---

[1] Florida's statute of limitations for defamation, libel and slander is two-years. *See* §95.11(4)(g). Thus, Plaintiff's claims are timely irrespective of whether New York or Florida laws apply.

[2] *See, e.g., Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990) ("This is not the sort of loose, figurative or hyperbolic language which would negate the impression that the writer was seriously maintaining petitioner committed the crime of perjury. Nor does the general tenor of the article negate this impression.").

# GERSTMAN SCHWARTZ LLP

### ATTORNEYS AT LAW

literal, accuracy." *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting Sys.*, Inc., 844 F.2d 955, 959 (2d Cir.1988).

Further, even the contention that Dr. Loudon, as a notable published author who has written about prominent public officials and appeared on news channels to discuss public officials and her books is, therefore, automatically a public person, should actually be determined by a jury. The evident intellectual dishonesty in which the Article is billed, laid out, published and edited conveys a malicious intent to portray Dr. Gina in a negative and false light and ultimately to mislead the casual reader who likely will just read the headline or the lede or skim the content.

Here, the headline at issue is not just an opinion. The phrase *"DOCTOR WHO"* is gratuitous and clearly intended to be so. It is a statement intended in its entirety to mislead the reader and tag Dr. Gina as a fraud. Other outlets with an axe to grind have used this false and misleading headline to republish and generate their own false headlines afterwards like "Fox's Trump-Loving 'Psychology Expert' A Fake."[3] Mission accomplished. Despite being objectively false—and certainly misleading—by maliciously, deftly and systematically misrepresenting Dr. Loudon's credentials, The Daily Beast created a fictive biography for Dr. Loudon. This is not news reporting. It also bears mentioning that the New York State Court of Appeals in *Chapadeau v. Utica Observer*, 38 N.Y. 2d 196, 199 (1975), while alluding to the Supreme Court in *Gertz v. Robert Welch*, 418 U.S. 323 (1973), articulated that "[t]he court felt that private individuals are more vulnerable because they lack a forum to rebut the false statements and that they are more deserving of recovery because they have not thrust themselves into the vortex of public controversy." Here, Dr. Gina was strategically discredited with falsehoods, thereby denying her any meaningful forum to rebut these false statements. When the publishers have stopped knocking and doors have now closed where previous invites to discuss her books were once bountiful—due directly to these falsehoods—we are expressly asking the Court to put back on some guardrails because it should be recognized that, in no uncertain terms, the Daily Beast's beastly conduct is not of the ilk found necessary to protect in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Even a cursory review of the Article, for the reasons articulated in our Complaint, makes clear that not only is the Daily Beast not employing journalistic standards warranting *New York Times* protections—that were historically afforded a generally responsible Fourth estate[4]—but its

---

[3] http://www.newshounds.us/fox_trump_loving_psychology_expert_fake_091418
[4] President Theodore Roosevelt on Muckraking:

> Now, it is very necessary that we should not flinch from seeing what is vile and debasing. There is filth on the floor, and it must be scraped up with the muck-rake; and there are times and places where this service is the most needed of all the services that can be performed. But the man who never does anything else, who never thinks or speaks or writes, save of his feats with the muck-rake, speedily becomes, not a help to society, not an incitement to good, but one of the most potent forces for evil. There are, in the body politic, economic and social, many and grave evils, and there is urgent necessity for the sternest war upon

# GERSTMAN SCHWARTZ LLP

ATTORNEYS AT LAW

conduct viewed in the totality constitutes "actual malice." Additionally, Defendants assert that Dr. Loudon "does not dispute" this or that when, in fact, Dr. Loudon does dispute all these characterizations. That the Article went to print after her publisher clarified matters is a further indication of malice and is not exculpatory as Defendants would have it. Indeed, by denying Dr. Loudon the very appellation of "Doctor" when she is irrefutably a Ph.D. not only reflects overdone malice, it is simply not protected. "The scope of the newsworthiness exception to liability, however, must be construed in accordance with binding Court of Appeals precedent. The Court of Appeals has held that statutory liability applies to a materially and substantially fictitious biography where a knowing fictionalization amounts to an all-pervasive use of imaginary incidents and a biography that is nothing more than [an] attempt[] to trade on the persona of the plaintiff." *Porco v. Lifetime Entertainment Servs., LLC*, 147 AD 3d 1253, 1254 (3d Dep't 2017) (internal citations omitted).

It is respectfully argued that the Defendant's layer-caking of falsehoods to ridicule and discredit Dr. Loudon is "all-pervasive," fictive and an affront to journalism. It is a hit piece intended to silence and ruin, and not journalism worthy of 4th estate protections.

## II.    Intentional Infliction of Emotional Distress and Tortious Interference.

For all intents and purposes, the Defendant is putting the cart before the horse in seeking to dismiss the intentional infliction of emotional distress and tortious interference causes of action pre-discovery as a matter of law. As a practical matter, these claims have been sufficiently pled and intentionality is substantially borne out by the cascade of layered falsehoods intended to discredit, harm, silence and make Dr. Loudon the subject as an indirect means of attacking the President. Dr. Loudon, however, is not a surrogate of the President as alleged by Defendants' counsel, but rather an author who has written about the President in the context of her book; which is not quite the same thing. It is, however, the reason that false *ad hominem* attacks were employed against her. This said, making knowingly false statements about her with obvious malice is not protected First Amendment speech. Neither is making statements that the Defendants' writer had

> them. There should be relentless exposure of and attack upon every evil man whether politician or businessman, every evil practice, whether in politics, in business, or in social life. I hail as a benefactor every writer or speaker, every man who, on the platform, or in book, magazine, or newspaper, with merciless severity makes such attack, **provided always that he in his turn remembers that the attack is of use only if it is absolutely truthful. The liar is no whit better than the thief, and if his mendacity takes the form of slander, he may be worse than most thieves. It puts a premium upon knavery untruthfully to attack an honest man,** *or even with hysterical exaggeration to assail a bad man with untruth*. An epidemic of indiscriminate assault upon character does not good, but very great harm. The soul of every scoundrel is gladdened whenever an honest man is assailed, or even when a scoundrel is untruthfully assailed.

Theodore Roosevelt, Pres. of the U.S., The Man with the Muck-Rake (Apr. 14, 1906).

# GERSTMAN SCHWARTZ LLP

### ATTORNEYS AT LAW

to have known would cause mental anguish and embarrassment while causing her to lose or diminish current and prospective lucrative opportunities as an author and expert. Pre-discovery, and even pre-verified bill of particulars, to attempt to have these causes of action dismissed as a matter of law is, at the very least, premature. The idea that no triable issues of fact exist warranting dismissal as a matter of law at this juncture is about as sound as the lies and intentionally misleading lede and content of Defendant's article. *See Zuckerman v. City of NY*, 49 N.Y.2d 557 (1980).

## III.    IAC Should Not Be Dismissed.

On information and belief, The Daily Beast is referenced as part of IAC's publishing business in IAC's 10K filed with the SEC and alternatively as an online business of IAC and an IAC Brand. The Defendant cites to *Franklin v Daily Holdings, Inc.* 135 A.D.3d 87 (1st Dept. 2015) for the proposition that, as a matter of law, publication cannot be imputed to an indirect corporate owner like IAC. In actuality, however, the court in *Franklin* never quite reached this question. Instead, it was stated that "Defendant News Corp. *argues* that plaintiff failed to plead a cause of action against it, since News Corp. cannot be held liable for statements of its subsidiary. In response, plaintiff argues that his claim is actually one based upon piercing the corporate veil." *Id.* at 95-96 (emphasis added). The court then ruled that the piercing the corporate veil threat had not been met based on a dominion analysis. *Id.* Here, pre-discovery, we only have counsel's word for how IAC operates its publishing arm and what role IAC plays in such publishing. Essentially, it is premature to let IAC off the hook at this stage.

## IV.    Attorneys' Fees and Costs.

As articulated herein, despite your contentions, Plaintiff's claims are not without merit and are wholly supported by the facts. In the first instance, we maintain that New York law attaches based on the center of gravity: the location of the publisher who promulgated the wrong. Notably, we filed this lawsuit in New York Supreme Court based on the publisher's location. We note as well that the harm and damages to Dr. Loudon emanate from New York and that such is irrefutable. Dr. Loudon has not been called back to Fox and Friends in New York and New York publishers are no longer beating a path to her door. If, however, the Court somehow decided otherwise, the Court is not required to award attorneys' fees and costs to the prevailing party under the permissive language of Florida's anti-SLAPP statute as Dr. Loudon has a good faith basis for initiating this lawsuit in order to attempt to restore her good name and check the dishonest and malicious conduct of the defendants. *See* Fla. Stat. § 768.29.

Sincerely,
/s/
David M. Schwartz
Randy E. Kleinman

cc:      The Honorable Victor Marrero (by facsimile)

# Exhibit 3

## Public Record Concerning Loudon's Career as Commentator and Advocate in Florida

## Exhibit 3: Loudon's Career as Commentator and Advocate Is Centered in Florida

1.       Gina Loudon, https://drginaloudon.com/ (displaying numerous press appearances by plaintiff, including on national broadcast/cable media, from Florida).

2.       Gina Loudon, *Guest Opinion: Ballot backfire for Florida Democrats a warning for Republicans*, Florida News Online http://www.flanewsonline.com/guest-opinion-ballot-backfire-for-florida-democrats-a-warning-for-republicans/ (published commentary in Florida online publication about Florida election procedures).

3.       Gina Loudon, *Trump's popularity in Florida isn't a surprise to Sunshine State residents | Opinion*, South Florida Sun-Sentinel (Sept. 25, 2019), https://www.sun-sentinel.com/opinion/commentary/fl-op-com-loudon-trump-poll-lead-florida-20190925-wtnaqjsqafcdvp5nvyxnex3jou-story.html (published commentary in Florida newspaper on President Trump's reelection prospects in Florida).

4.       Gina Loudon, *Gina Loudon: Florida Picked Trump Because He Promised Winning*, Florida Daily (Sept. 5, 2019), https://www.floridadaily.com/gina-loudon-florida-picked-trump-because-he-promised-winning/ (published commentary in Florida publication on President Trump's popularity in Florida).

5.       Gina Loudon, *Gina Loudon: Trump Travel Ban Will Keep Florida Safe*, Newsmax (July 13, 2018), https://www.newsmax.com/politics/travel-ban-trump-supreme-court-florida/2018/07/13/id/871548/ (published commentary about impact of travel ban in Florida).

6.       Joel Malkin, *Female Trump Supporters Are Mobilizing Volunteers In Florida*, WJNO (Nov. 15, 2019), https://wjno.iheart.com/featured/florida-news/content/2019-11-15-female-trump-supporters-are-mobilizing-volunteers-in-florida/ (appearing on radio show as Florida Co-Chair of Women for Trump).

7.       Skyler Swisher and Aric Chokey, *From 'Wife Swap' to Florida politics, couple leads push for voter referendum that targets fears of noncitizens voting*, South Florida Sun-Sentinel (Mar. 15, 2019), https://www.sun-sentinel.com/news/politics/fl-ne-citizens-voter-referendum-20190315-story.html (discussing Plaintiff's creation of Florida Citizen Voters and its initiative to change Florida ballot).

8.       Aidan McLaughlin, *'DR. GINA': Trump Adviser Who Pretended to Be a Psychology Expert Now Pretending to Be a Lawyer?*, Mediaite (Nov. 20, 2018), https://www.mediaite.com/tv/dr-gina-trump-adviser-who-pretended-to-be-a-psychology-expert-now-pretending-to-be-a-lawyer/ (including photographs of Plaintiff's Instagram feed, which she describes as showing her "Counting votes w/ our amazing @gop chair, @RonnaMcDaniel in #BrowardCounty").

9.       Chantal da Silva, *Trump Adviser Says Presidents Have Done 'Amazing' Things For Black People Without Diversity In White House*, Newsweek (Aug. 16, 2018), https://www.newsweek.com/trump-adviser-says-presidents-have-done-amazing-things-black-people-without-1075527 (depicting Plaintiff appearing on CNN from West Palm Beach).

10.      *Women for Trump 2020 meet in Palm Beach*, WPBF (Nov. 15, 2019), https://www.wpbf.com/article/women-for-trump-2020-meet-in-palm-beach/29815677 (reporting on Plaintiff's having led a panel for Women for Trump in Palm Beach).